ALBERT C. COLLINS *versus* INHABITANTS OF SCHOOL DISTRICT No. 7, IN LIBERTY.

By c. 193, art. 2, § 2, of the Public Laws of 1850, every school district shall in all cases be presumed to have been legally organized when it shall have exercised the franchise and privileges of a district for the term of one year.

What acts are sufficient evidence of the exercise of the franchise and privileges of a district to authorize the presumption that it has been legally organized.

The fact that an attempt to establish the district, confessedly abortive, was made in 1853, is not sufficient to rebut the presumption arising from the

Collins *v.* School District No. 7, in Liberty.

exercise of the franchise and privileges of a district by the defendants for more than a year prior to 1856.

In assumpsit, by the builder against a school district, to recover pay for building a school house and finding materials therefor, the defendants cannot object to the absence of proof of a legal meeting to determine upon the building and the raising of the money therefor, unless they have raised such objection by their specifications of defence.

Where an order, drawn by the building committee upon the town treasurer, is indorsed to a third person, and an action is brought thereon in the name of the payee for the benefit of the holder, the plaintiff may strike off the indorsement and have judgment in his favor.

ON FACTS AGREED.

The facts sufficiently appear in the opinion of the Court.

The case was reported with an agreement, that, if the Court should be of opinion that the plaintiff is entitled to recover, judgment was to be rendered in his favor for the amount due on the orders and costs ; if not, for the defendants for their costs.

*W. G. Crosby*, for the plaintiff.

*Knowlton*, for the defendants.

The opinion of the Court was drawn by

BARROWS, J.—Assumpsit. Writ dated Nov. 26, 1860. The case is submitted upon a statement of facts agreed to by the respective counsel.

What the issue presented for determination is must be ascertained by an inspection of the writ and specifications of defence, which are made part of the case. The writ contains a count on an account annexed, (in which the defendants are charged for labor done, and materials furnished and used in building a school house in said District No. 7, and for interest on the balance after crediting about $90, as a partial payment,) and a general count for labor, services and materials, — also a count for money had and received, under which plaintiff claims to recover the amount of two orders with interest thereon, drawn by Aaron Collins, Elbridge Davis and Horace Collins, styling themselves a "building committee," upon Albert D. Mathews, treasurer of the town

of Liberty, requiring him to pay to the plaintiff or order, the sums therein named, "out of the treasury of the town, on account of building a school house in District No. 7, in Liberty." The specifications of defence are :—1. That plaintiff never furnished the materials and performed the labor specified in this writ to and for the defendants. 2. That plaintiff has been paid for all the labor done and all the materials furnished for or to said defendants by him, by orders on the treasurer of the town of Liberty, which orders have been duly presented to said treasurer, and by him accepted. 3. That there is no such school district in said town of Liberty, as School District No. 7.

By the agreed statement of facts, it appears that plaintiff did build a school house in 1856, and furnished the materials for the same, under a contract with the aforesaid Aaron Collins, Elbridge Davis and Horace Collins, ("who then were and are now residents of said district, and who claimed to be, styled themselves, and *were* building committee in said district,") whereby they agreed to pay plaintiff $225 therefor, in orders on the town treasurer, drawn by them in their official capacity as building committee ; that they did give him the orders, which were received by plaintiff in payment for what he had done under the contract ; that a part of them were paid, and the remainder accepted, but when they were presented for payment, it was refused because the treasurer had no funds in his hands belonging to said district.

The town treasurer has the same powers and is subject to the same duties and obligations relating to district taxes as relating to town taxes. R. S., c. 11, § 40, reënacted from similar provisions in art. 3, c. 193, laws of 1850.

He is, *quoad hoc,* the treasurer of the district.

The facts thus far stated dispose of the first and second specifications, and no defence is shown to the plaintiff's claim to recover the balance of the orders.

The defendants rely upon the third specification, viz. : that there is no such school district in the town of Liberty, as School District No. 7. Whether there is or not seems to

be the only question about which a real controversy can exist under this statement and these specifications.

It is conceded in the outset, on the part of the plaintiff, that "there is no evidence of the legal organization of said district, or of any legal meetings held therein, for the transaction of any business relating to matters that may be acted upon by school districts, *except* so far as the Court may legally infer the same from the facts herein agreed," and, that, "prior to 1853, what is now styled District No. 7 was part of District No. 1; that an attempt was then made to organize District No. 7, but the proceedings were illegal; that *nearly one third* part of the inhabitants residing in what is termed District No. 7 have never acknowledged the legality of the organization of said district, were always opposed to the same, have never attended any school meeting therein, have never sent any scholars to any school kept in said district or in said school house, have never accepted or used said house in any way or manner whatever, and have always claimed to belong to the old District No. 1, and have sent their scholars there to school, and that plaintiff was for a long time before and after he built the school house a resident of said supposed District No. 7."

*Per contra*, it is admitted that, since 1853, "the existence of District No. 7 has been recognized by the officers of the town; that there has been a summer and winter school kept in said district every year since then, and in said school house since it was built; that the expenses of said schools have been paid for by money drawn from the treasury of the town on town orders drawn in the usual manner; that every year since said date they have had a clerk and agent in said district; that, in 1856, before said school house was built, the clerk of said district certified to the assessors of said town that the district had raised the sum of $225, for defraying the expenses of building a school house therein, and that said assessors within thirty days thereafter assessed that amount on the polls and estates in said district, and duly certified the same to the treasurer of the town, and

committed proper lists thereof to the collector of taxes of said town for collection; that he collected about $90 of the same, which was paid over to the town treasurer, and by him paid out upon the orders of the building committee aforesaid, and that the balance of the tax has never been collected.

Chap. 193, article 2, section 2, of the laws of 1850, provides "that every school district shall, in all cases, be presumed to have been legally organized when it shall have exercised the franchise and privileges of a district for the term of one year."

The defendants' counsel contends that the admission on the part of the plaintiff, that there is no evidence of the original organization except the acts and facts set forth in the agreed statement, is equivalent to an admission that there was no organization, and that, in the face of such an admission, it is absurd for the plaintiff to ask us to infer its existence. But the presumption authorized, and, in the absence of fraudulent and corrupt practices to procure the establishment of the district, *required* by the statute above cited, applies and was intended to apply in cases where there was no evidence of legal organization. Elsewhere it is needless. It was designed for the protection of those who, finding a body of men exercising the functions of a school district, have dealt with them under the belief that they exercised such franchise and privileges rightfully. Such individuals might suffer wrongfully if the party were permitted to rely upon informalities or illegalities in the proceedings by which they took upon themselves the corporate powers of a district. The counsel further argues that it is only the *legality* of the organization, not the organization itself, that can be presumed. The discrimination cannot be sustained. The organization, unless legal, is a nullity. The body derives vitality only from a legal organization. The legality is essential to the fact, and the presumption called for by the statute includes both.

The counsel for the defendants carefully enumerates many

things that a district might do, which do not by this statement appear to have been done by this district, but the acts before recited are sufficient evidence of the exercise of the franchise and privileges of a district, by the defendants, to authorize the presumption which the plaintiff asks us to make, and, with the establishment of the existence of the district, disappears the last matter specified in defence of the suit. The bare fact that an attempt to establish the district, confessedly abortive, was made in 1853, is not sufficient to rebut the presumption arising from the exercise of the franchise and privileges of a district by the defendants for more than a year prior to 1856.

It is further argued on the part of the defence *that,* even if the legal organization of the district is to be inferred, in the absence of any distinct proof of a legal meeting to determine upon the building of a school house, raise the money, &c., such as is necessary to the making of a valid contract with the district to build the school house, the plaintiff cannot recover.

The want of appropriate specifications would preclude the defendants from urging this and other objections, suggested in argument, to the plaintiff's right to recover the amount of these orders drawn in his favor by those who, it is admitted, not only claimed to be, but *were* the building committee of the defendant district.

But the plaintiff is not obliged to resort to the pleadings to enable him to recover. No one can doubt the identity of this building committee, with the "committee to superintend the laying out and expending of the moneys raised by the district," authorized by § 9, art. 2, c. 193, laws of 1850. And verbal accuracy is not to be expected or required in the transactions of a school district. See *Soper* v. *School District No. 9, in Livermore,* 28 Maine, 193.

The clerk certified to the assessors the raising of the money, and the assessors duly assessed it upon the district; the plaintiff built the school house under a contract with the committee, and the case finds that the district

has had its clerk and agent every year, and that every summer and winter since the school house was built a school has been maintained in it, the expenses of which were defrayed in the usual manner. It cannot be successfully argued that this was not an acceptance on the part of the district, binding the district to pay the reasonable value of the building, quite as strongly as in the case of *Abbot* v. *School District No.* 3, *in Hermon,* 7 Greenl., 118, in which case the individuals assuming to act as district committee had no authority. That the sum claimed by the plaintiff is a reasonable one is not controverted, and plaintiff would be entitled to recover under his general count had he not received the orders which he seeks to collect in this suit as payment. It seems, then, that the orders were drawn by those who "*were*" the committee of the district to superintend the expenditures of its moneys, for a valuable consideration, payable to the plaintiff, and that they were accepted by the treasurer of the town acting herein as the treasurer of the district, and that they remain unpaid.

It is further objected that plaintiff cannot have judgment upon the orders because he has sold and indorsed them to Lewis Sturtevant; but it seems that the suit is prosecuted for the benefit of Sturtevant in the plaintiff's name with his consent. He has the right to strike off his indorsement, and, upon filing the orders, may have judgment for the amount of the same, with interest from the date of the acceptance.                         *Judgment for plaintiff.*

APPLETON, C. J., CUTTING, KENT, WALTON and DANFORTH, JJ., concurred.